UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION,<br><br>                    Petitioner,<br><br>        v.<br><br>MARK SCHAEFER,<br><br>                    Respondent. | No.<br><br>**PETITION TO VACATE ARBITRATION AWARD** |

PETITION TO VACATE
ARBITRATION AWARD

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**INTRODUCTION**

1.      Pursuant to Section 10 of the Federal Arbitration Act, 9 U.S.C. § 10, Petitioner Valve Corporation ("Valve") requests that this Court vacate the final arbitration award ("Award") issued by Arbitrator Suzanne M. McSorley (the "Arbitrator") in a proceeding before the American Arbitration Association ("AAA") captioned *Mark Schaefer v. Valve Corp. d/b/a Steam*, AAA Case No. 01-23-0005-3678 (the "Arbitration").[1]

2.      The Award should be vacated for several independent reasons: *First*, the Arbitrator held a hearing in the Arbitration even though the parties had no agreement to arbitrate. *Second*, the attorneys' fees and costs awarded by the Arbitrator are arbitrary and irrational, comprising more than 80 times the damages awarded in his case. Those figures reflect fees improperly granted for work performed in other, unrelated arbitrations—including arbitrations in which Respondent's counsel *lost*—and fees based on inflated hourly rates untethered to prevailing norms. *Third*, the Arbitrator violated Valve's due process rights.

**THE PARTIES**

3.      Petitioner Valve is a Washington corporation with its principal place of business in King County, Washington.

4.      Respondent Mark Schaefer ("Respondent") is an individual and resident of Belleville, New Jersey. Respondent alleges that he is a Steam user.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction under 28 U.S.C. § 1332(a) because the aggregate amount in controversy exceeds $75,000 exclusive of interest and costs and Valve and Respondent are citizens of different states.

6.      In July 2025, the Arbitrator held evidentiary hearings for two of the then-24 claimants

---

[1] On April 24, 2026, Respondent's counsel filed in *Valve Corporation v. Abbruzzese*, No. 2:24-cv-1717 (W.D. Wash.), an omnibus motion to confirm 20 awards issued by the Arbitrator between April 21, 2026, and April 23, 2026, including Respondent's Award. Valve will file a cross-motion to vacate 19 of those awards, but not Respondent's Award, in *Abbruzzese*. Valve files this petition separately because Respondent is not a party in *Abbruzzese*. (*See* Dkt. 78.)

PETITION TO VACATE
ARBITRATION AWARD - 1

before her, Alec Birenbaum and Lance Vicente (the "October Claimants"), over Valve's objection, and issued final awards for both claimants (the "October Awards").

7. In the October Awards, the Arbitrator awarded attorneys' fees and costs totaling $1,454,329.68.

8. The Arbitrator explained in the October Awards that the fees awarded were for "time devoted to the 24 matters assigned to this arbitrator," including Respondent's, and that all 24 matters had been "managed collectively before me."[2] The Arbitrator further stated that the hours devoted by counsel to the Birenbaum and Vicente matters were "necessary . . . to prepare the matters assigned to this Arbitrator generally."

9. The Arbitrator limited Respondent's hearing—and hearings for the other remaining claimants—to individual issues of standing and damages, ruling that Valve was bound by her prior findings of liability in the October Awards. Specifically, on November 11, 2025, Arbitrator McSorley ruled that "the evidence adduced at the merits hearings of the Birenbaum and Vicente matters . . . shall be cross-admitted in the merits hearings" for the remaining 20 claimants (including Respondent), except evidence relating to standing, injury, and/or damages.

10. In Respondent's Award, the Arbitrator's findings on liability repeatedly reference evidence adduced during the October Claimants' matters.

11. The fees and costs from the October Awards represent $60,597.04 per claimant for the 24 claimants who were then before the Arbitrator, including Respondent.

12. In Respondent's Award, the Arbitrator awarded him an additional $23,308.96, comprising $1,029.03 in damages and $22,279.93 in attorneys' fees and costs. That was on top of the $60,597.04 in attorneys' fees and costs awarded in the October Awards attributable to his counsel's pursuit of his claim, for a total of $83,906.

13. Venue is appropriate in this Court because Section 10 of the agreement between the parties

---

[2] There were originally 24 claimants before the Arbitrator. The Arbitrator issued the October Awards in two claimants' cases. On March 9, 2026, the Arbitrator dismissed the claims of two claimants. Between April 21, 2026, and April 23, 2026, the Arbitrator issued final awards in the remaining 20 cases.

PETITION TO VACATE
ARBITRATION AWARD - 2

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

provides:

> You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.[3]

(Ex. B § 10.)

14.    This Court has personal jurisdiction over Respondent because Section 10 of the agreement between the parties provides:

> You and Valve hereby consent to the exclusive jurisdiction of [any state or federal court located in King County, Washington, having subject matter jurisdiction] and waive any objections as to personal jurisdiction or venue in such courts.

(Ex. B § 10.)

15.    Respondent affirmatively submitted to the jurisdiction of this Court by filing a motion to confirm in *Abbruzzese*. *Abbruzzese*, Dkt. 142.

## SUMMARY OF FACTS

**A.    Valve, the Steam Platform, and the SSA**

16.    Valve is a video game developer, publisher, and digital distribution company. Valve offers an online platform called Steam, where consumers can purchase, play, and interact with their friends about video games.

17.    For an individual to create a Steam account and become a Steam user, they must first agree to Valve's customer agreement, the Steam Subscriber Agreement ("SSA").

18.    Valve has periodically modified the SSA since it was first implemented in 2003.

**B.    Respondent Commences Arbitration, the Arbitration Agreement Is Found Unenforceable, and Respondent's Counsel Commences a Class Action**

19.    On October 2, 2023, Respondent filed his demand for arbitration against Valve with the AAA.

---

[3] The Superseded SSA also required that disputes brought in court proceed in any state or federal court located in King County, Washington, with subject matter jurisdiction.

PETITION TO VACATE
ARBITRATION AWARD - 3

20.    Respondent filed his Arbitration pursuant to the arbitration provision set forth in the SSA then in effect (the "Superseded SSA").

21.    The Superseded SSA provided that it "may at any time be mutually amended by your explicit consent to changes proposed by Valve." (Ex. A § 8A.)

22.    The Superseded SSA further stated:

> Valve may amend this Agreement . . . unilaterally at any time in its sole discretion. In this case, you will be notified by e-mail of any amendment to this Agreement made by Valve at least 30 . . . days before the effective date of the amendment. You can view the Agreement at any time at http://steampowered.com/. Your failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms. If you don't agree to the amendments or to any of the terms in this Agreement, your only remedy is to cancel your Account or to cease use of the affected Subscription(s).

(Ex. A § 8B.)

23.    The AAA assigned Respondent's Arbitration to Arbitrator Suzanne M. McSorley for resolution on the merits.

24.    On July 8, 2024, Respondent's counsel obtained four rulings before a merits arbitrator holding that the arbitration provision in the Superseded SSA was unenforceable. This Court previously held the question of whether the arbitration provision in the Superseded SSA was enforceable was a question to be decided by an arbitrator. *See Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC, 2021 WL 4952220, at *1 (W.D. Wash. Oct. 25, 2021).

25.    On August 9, 2024, Respondent's counsel and its co-counsel filed *Elliott v. Valve Corporation*, No. 2:24-cv-01218-JNW (W.D. Wash.) ("*Elliott*"), in this Court asserting antitrust claims on behalf of a putative nationwide class of Valve consumers, including Respondent. Respondent's counsel and its co-counsel asserted that all Steam users' claims belonged in court because Respondent's counsel had "won binding decisions from arbitrators rendering Valve's arbitration provision unenforceable." Complaint ¶ 13, *Elliott*, Dkt. No. 1.

**C.    Valve Updates the Steam Subscriber Agreement and Provides Steam Users Notice**

26.    As a result of the arbitrator's rulings and the filing of the new *Elliott* class action, Valve

PETITION TO VACATE
ARBITRATION AWARD - 4

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

updated the Steam Subscriber Agreement to remove the arbitration provision and class action waiver.

27.   On September 26, 2024, Valve provided notice to Steam users including Respondent that the arbitration provision and class action waiver were being removed from the SSA effective (i) "immediately when you agree to it, including when you make most purchases, fund your Steam wallet, or otherwise accept it," or otherwise (ii) on November 1, 2024.

28.   When Valve launched the updated SSA (the "Controlling SSA"), Valve inserted a prominent banner at the top of the agreement. The banner is set forth below.

Install Steam     login  |  language

 STEAM      **STORE**   COMMUNITY   ABOUT   SUPPORT

Valve has updated the Steam Subscriber Agreement. The updates affect your legal rights, including how disputes and claims between you and Valve are resolved. Among other things, the new dispute resolution provisions in Section 10 require that all disputes and claims proceed in court and not in arbitration. Please review carefully.

Home

Steam Subscriber Agreement

29.   Also, beginning on September 26, 2024, Valve provided the email notice shown below to all U.S. Steam users of the change to the SSA (the "Email Notice"), sending the notice to the email address of record for their Steam accounts. The Email Notice specifically called out changes to the dispute resolution provision:

PETITION TO VACATE
ARBITRATION AWARD - 5

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Hello

**We have updated the Steam Subscriber Agreement**

We've updated the Steam Subscriber Agreement. The updates affect your legal rights. They include changes to how disputes and claims between you and Valve are resolved. The updated dispute resolution provisions are in Section 10 and require all claims and disputes to proceed in court and not in arbitration. We've also removed the class action waiver and cost and fee-shifting provisions. Please carefully review the updated Steam Subscriber Agreement here.

This updated Steam Subscriber Agreement will become effective immediately when you agree to it, including when you make most purchases, fund your Steam wallet, or otherwise accept it. Otherwise, the updated Steam Subscriber Agreement will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then. If you would like to delete your Steam account, you can learn more about account deletion here.

This notification has been sent to the email address associated with your Steam account.

PETITION TO VACATE
ARBITRATION AWARD - 6

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

30.    The Email Notice included multiple links to the full Controlling SSA, shown in blue text above.

31.    Also, beginning on September 26, 2024, Valve published a blog post on the Steam platform providing notice of the change to the SSA, available at https://store.steampowered.com/news/app/593110/view/4696781406111167991 (the "Blog Post"). The Blog Post provided:



32.    The Blog Post included multiple prominent and easily accessible links to the full Controlling SSA, shown in blue text above.

**D.    Respondent Agrees to the Controlling SSA and to Proceed with All Claims in Court**

33.    Respondent agreed to the SSA when he opened his Steam account on April 25, 2011.

34.    On or around September 26, 2024, Valve provided Respondent the Email Notice at the

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

email address provided to Steam when his account was opened.

35.    Respondent did not delete or request to delete his Steam account before November 1, 2024.

36.    Respondent logged into Steam on December 3, 2025.

37.    The Controlling SSA requires that all claims, including claims that arose before the new agreement, proceed in court:

> You and Valve agree that disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.

(Ex. B § 10.)

38.    The Controlling SSA also provides that it "constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements." (Ex. B § 11.)

**E.    The Arbitrator Denies Valve's Request for a Stay and Holds Final Merits Hearings on Respondent's Claims**

39.    Because the Controlling SSA removed the parties' arbitration agreement, on October 18, 2024, Valve commenced *Valve Corporation v. Abbruzzese*, No. 2:24-cv-1717 (W.D. Wash.) ("*Abbruzzese*"), in this Court to enjoin 624 pending arbitrations, including Respondent's Arbitration.

40.    On August 21, 2025, Valve removed Respondent from *Abbruzzese* because based on data available at the time it appeared that he had not yet assented to the Controlling SSA. Respondent subsequently assented to the Controlling SSA as set forth herein.[4]

41.    On October 19, 2024, Valve requested that the Arbitrator stay Respondent's Arbitration and the other 23 arbitrations then pending before her pending resolution of *Abbruzzese*.

42.    On October 27, 2024, the Arbitrator denied Valve's request to stay the arbitrations before her. As it had done until then, Valve defended itself in further proceedings under a full reservation of rights on the ground that there was no agreement to arbitrate. The Arbitrator held merits hearings on

---

[4] There are currently 396 Defendants in *Abbruzzese*. The remaining individuals were voluntarily dismissed or removed from the case. *Abbruzzese*, Dkt. 160 at 5 & App'x A.

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Respondent's claim over Valve's objection.

**F.    The Arbitrator Issues the October Awards**

43.    In July 2025, the Arbitrator held evidentiary hearings for the October Claimants over Valve's objection. The evidentiary hearings in the October Claimants' arbitrations covered findings of liability applicable to the claims of the October Claimants and the other 22 claimants before the Arbitrator, including Respondent.

44.    On October 9, 2025, the Arbitrator issued the October Awards. Those awards included an award of (i) damages for the October Claimants and (ii) attorneys' fees and costs attributable to Respondent's counsel's work prosecuting the arbitrations of the October Claimants and the other 22 claimants before the Arbitrator, including Respondent.

45.    The Arbitrator deprived Valve of its due process rights in connection with the attorneys' fee and cost application submitted by Respondent's counsel in the October Claimants' arbitrations for efforts on behalf of all 24 claimants before the Arbitrator, including Respondent. The Arbitrator did not permit Valve to respond to Respondent's counsel's fee submissions.

46.    The attorneys' fees and costs that Respondent's counsel sought and obtained in the October Awards for efforts on behalf of all 24 claimants before the Arbitrator, including Respondent, were based on timesheets replete with entries for which no fees could properly be awarded.

47.    On October 10, 2025, Valve filed petitions in this Court to vacate the October Awards because (i) they were issued in the absence of an agreement to arbitrate and (ii) the attorneys' fee awards were irrational and violated Valve's due process rights because Valve was denied any opportunity to respond to Respondent's counsel's fee submissions. *See Valve Corp. v. Birenbaum*, No. 25-cv-01975-JNW (W.D. Wash. filed Oct. 10, 2025); *Valve Corp. v. Vicente*, No. 25-cv-01976-JNW (W.D. Wash. filed Oct. 11, 2025). Those petitions to vacate are fully briefed and *sub judice*.

**G.    The Arbitrator Holds Evidentiary Hearings on Respondent's Claim, Orders Submissions on Attorneys' Fees, and Issues the Award**

48.    In December 2025 and February 2026, the Arbitrator held final merits hearings for the remaining claimants before her.

PETITION TO VACATE
ARBITRATION AWARD - 9

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

49. On February 3, 2026, the Arbitrator held a hearing in Respondent's Arbitration.

50. The Arbitrator limited Respondent's hearing to individual issues of standing and damages, ruling that Valve was bound by her prior findings of liability in the October Awards.

51. On February 17, 2026, the Arbitrator set a briefing schedule for any supplemental fee requests by Respondent's counsel relating to the 11 claimants' claims heard in December 2025 (the "December Claimants") for expenses incurred between January 12, 2026, and March 3, 2026.

52. Six days later, on February 23, 2026, the Arbitrator set a separate briefing schedule for any supplemental fee requests relating to the nine claimants' claims heard in February 2026 (the "February Claimants"), including Respondent's.

53. Respondent's counsel's fee submission on behalf of the February Claimants included time entries for work performed on behalf of the February *and* December Claimants, making it impossible for Valve to parse the time entries and lodge separate objections as to these distinct claimant groups.

54. In support of the fee submission, Respondent's counsel submitted a timesheet in Microsoft Excel format purporting to cover all time entries for the February and December Claimants since the hearings for the October Claimants.

55. Respondent's counsel represented that the timesheet it submitted allocates time to each of the 20 February and December Claimants, with time that benefited all 20 allocated in even shares, and time specific to an individual's claim or testimony allocated only to that claimant. The timesheet tabulates the fees from individual entries and fees allocated from group entries for each of the 20 February and December Claimants, along with interest calculations.

56. The timesheet represents that at least $6,324 of the $21,732.63 additional attorneys' fees sought and awarded to Respondent in the Award was for fee briefing, accounting for at least 29% of his additional fee request.

57. Many entries on the timesheet appear to be charges for general mass arbitration work, such as "Bucher PLLC Weekly Meetings."

58. Additionally, many of the charges appear to be for clerical work, such as communicating

PETITION TO VACATE
ARBITRATION AWARD - 10

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

with claimants to schedule hearings.

59.    On April 21, 2026, the Arbitrator issued the Award, in which she ruled on Respondent's standing and damages and awarded additional costs and attorneys' fees. On April 23, 2026, the AAA transmitted the Award to the parties.

## GROUNDS FOR VACATUR

### I.    The Court Should Vacate the Award Because the Parties Did Not Agree to Arbitrate

60.    A court "may make an order vacating the award . . . where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). An arbitrator exceeds her powers by issuing an award when the parties have no agreement to arbitrate. *See Bozek v. PNC Bank*, No. 20-cv-2875-JMY, 2020 WL 6581491, at \*5 (E.D. Pa. Nov. 10, 2020), *aff'd*, No. 20-3515, 2021 WL 4240359 (3d Cir. Sept. 17, 2021); *see also Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031, 1036 (W.D. Wash. 2011).

61.    Here, months before the Arbitrator set this matter for hearing, Respondent agreed to the Controlling SSA, described below. The Controlling SSA has no arbitration provision and requires resolution of all claims and disputes, including pending disputes, in court. Upon Respondent's agreement to the Controlling SSA, the Arbitrator had no authority to continue with the Arbitration or issue the Award. Accordingly, the Award must be vacated.

### A.    Respondent Agreed to the Controlling SSA

62.    Respondent agreed to the Controlling SSA.

63.    For online transactions, "mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement." *Grant v. T-Mobile USA, Inc.*, 2024 WL 3510937, at \*3 (W.D. Wash. July 23, 2024) (citation omitted).

64.    Valve provided notice to Respondent that was conspicuous and consistent with the modification requirements in the Superseded SSA. For notice to be "reasonably conspicuous," it must be displayed in a "'font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1195 (W.D. Wash. 2024) (citation omitted); *accord Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024).

PETITION TO VACATE
ARBITRATION AWARD - 11

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

65. Users manifest assent to updated terms if they continue to use a service after receiving notice of those terms. *See, e.g.*, *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at \*4 (9th Cir. Mar. 3, 2026) (users "unambiguously manifested assent" to updated terms "through their continued use of the Tile App"); *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 289-90 (S.D.N.Y. 2025) (claimant assented where he "continued to subscribe to and use [service]" after receiving notice of updated agreement); *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at \*12 (N.D. Cal. July 31, 2023) ("[E]mails followed by continued use is sufficient to establish assent."); *Dlugolecki v. PeopleConnect, Inc.*, 2020 WL 13587803, at \*2 (C.D. Cal. Nov. 9, 2020) (similar); *West v. Uber Techs.*, 2018 WL 5848903, at \*5 (C.D. Cal. Sept. 5, 2018) (similar).

66. Respondent is bound by the Controlling SSA because he received notice of its terms through the Email Notice and Pop-Up Notice and did not delete or discontinue use of his Steam account by November 1, 2024. To the contrary, Respondent logged into his Steam account on December 3, 2025, more than a year after the Controlling SSA went into effect on November 1, 2024. Accordingly, Respondent entered into a bilateral agreement with Valve through his continued use of Steam.

**B.    Under the Controlling SSA, There Was No Agreement to Arbitrate**

67. Under the Controlling SSA, the parties had no agreement to arbitrate.

68. A dispute resolution provision in an updated agreement is enforceable with respect to already-asserted claims when the provision provides for retroactive effect. *See Ireland-Gordy v. Tile, Inc.*, No. 25-403, 2026 WL 594859, at \*1-5 (9th Cir. Mar. 3, 2026) (enforcing updated terms of service with new forum provision to already-pending action)[5]; *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1127 (11th Cir. 2014) (new agreement without arbitration clause superseded and applied retroactively to foreclose arbitration under a prior agreement containing an arbitration clause where claim was originally asserted when

[5] The earlier arbitration agreements in *Tile* required all disputes to be arbitrated before the AAA; the updated arbitration agreement required disputes to be arbitrated before JAMS for disputes in North America. *See* Declaration of Steve Klinkner, Ex. B § 25.C, Ex. E § XVII.B, Ex. I at 23, *Ireland-Gordy v. Tile, Inc.*, No. 3:23-cv-04119-RFL (N.D. Cal. filed Aug. 14, 2023), Dkt. No. 34. The court enforced the forum provision in the updated terms retroactively with respect to the plaintiffs' pending claims. *See Tile*, 2026 WL 594859, at \*1-5 (enforcing agreement updated in October 2023); *see generally* Complaint, *Ireland-Gordy v. Tile, Inc.*, No. 3:23-cv-04119-RFL (N.D. Cal. filed Aug. 14, 2023), Dkt. No. 1.

PETITION TO VACATE
ARBITRATION AWARD - 12

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

defendant had arbitration clause); *SCPS LLC v. Kind L.*, No. CV 25-3255-MWF (SSCx), 2026 WL 96898, at *9-10 (C.D. Cal. Jan. 8, 2026) (enforcing forum provision in updated arbitration agreement as to individuals who assented to new agreement after submitting pre-filing notices of dispute to commence arbitrations; explaining that "the result would be the same even if the [individuals] had assented [to the updated agreement] after initiating arbitrations with the AAA"); *Saucedo v. Experian Info. Sols., Inc.*, No. 1:22-cv-01584-ADA-HBK, 2023 WL 4708015, *6-7 (E.D. Cal. July 24, 2023) (enforcing arbitration agreement to which plaintiff assented after filing action in court; rejecting plaintiff's argument that "an arbitration agreement entered after an action was filed cannot be retroactively applied").

69.    Here, Respondent agreed that the Controlling SSA would replace and supersede his prior agreement to arbitrate and apply retroactively to his claim.

70.    Therefore, at the time of the arbitral hearing, the parties had no agreement to arbitrate, and the Arbitrator had no authority to issue the Award. That Award should accordingly be vacated.

## II.    The Court Should Vacate the Award Because It Was Arbitrary and Irrational

71.    Under 15 U.S.C. § 15(a), Respondent's counsel may recover only a "reasonable attorney's fee." The amount the Arbitrator awarded far exceeds that amount. She ordered fees in an amount that is more than 234 times the actual damages awarded and more than 78 times the trebled damages awarded to Respondent when including the amount awarded in the October Awards attributable to Respondent's Arbitration. As the Arbitrator observed, "the amount of damages is a fraction of the attorney's fees . . . incurred in pursuit of those damages," and the October Award attorneys' fees and costs "dwarfed" the damages obtained.

72.    The fees are all the more arbitrary and irrational because more than one-quarter of the additional $21,732.63 awarded to Respondent in the Award was for fee briefing itself.

73.    The amount the Arbitrator awarded also far exceeds Respondent's counsel's own pre-litigation estimate that lead counsel Will Bucher presented when seeking third-party funding to bring this and thousands of other arbitrations.

74.    The timesheets Respondent submitted are replete with non-compensable entries. Such time

PETITION TO VACATE
ARBITRATION AWARD - 13

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

entries for attorneys' fees and costs sought in connection with the October Awards are detailed in Valve's prior evidentiary proffers, submitted in *Birenbaum* and *Vicente* and will not be repeated herein. *Birenbaum*, Dkt. 3; *Vicente*, Dkt. 3. Non-compensable time entries likewise abound in the requests for supplemental fees and costs in Respondent's Arbitration that the Arbitrator awarded.

75. Respondent's counsel sought and the Arbitrator awarded substantial additional fees for work not attributable to Respondent's Arbitration. In this regard, the Superseded SSA permitted the Arbitrator to award relief "only to the extent of that party's individual claim," not for any other matters. (Ex. A § 11(D).)

76. Yet many of the time entries for which Respondent's counsel sought and obtained additional fees appear to represent charges for general mass arbitration work, such as "Weekly Bucher Law team meeting," "team meeting," "firm meeting," and "Bucher Law PLLC Weekly Meeting."

77. These claimed additional fees for mass arbitration also include work Respondent's counsel did for other arbitrations against Valve.

78. Indeed, the additional fees awarded almost certainly cover work performed in furtherance of arbitrations that Respondent's counsel *lost*. At the time of the Award, arbitrators had issued final awards in 121 arbitrations Respondent's counsel is prosecuting against Valve, with claimants (including Respondent) having prevailed in just 26. Approximately 51 of the matters where Valve prevailed were pending during the time period covered by the general mass arbitration entries submitted in connection with Respondent's supplemental fee request. Attorneys cannot be awarded fees for working on matters where they were unsuccessful.

79. Moreover, the Arbitrator acknowledged that the fees awarded in the October Awards were for "time devoted to the 24 matters assigned to this arbitrator." Yet two of those 24 claimants' claims were later dismissed. Neither Respondent nor his counsel may recover for attorneys' fees or costs attributable to those arbitrations that the claimants lost.

80. In addition, Respondent's counsel sought additional fees before the Arbitrator for some of the very same work for which Respondent's counsel has sought fees before *another* tribunal on behalf of

PETITION TO VACATE
ARBITRATION AWARD - 14

an entirely *different* claimant.

81.    The supplemental time entries also abound with clerical tasks billed by attorneys at attorneys' rates, including numerous time entries relating to purported outreach to Respondent and other claimants to schedule hearings. This is not lawyer work—it is purely administrative. And it is not compensable.

82.    In addition, the hourly rates the Arbitrator applied are unreasonable. Courts assess reasonableness by benchmarking requested rates against "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

83.    Respondent's fee application misapplied the applicable legal standard.

84.    For example, Respondent sought and the Arbitrator ordered fees for:

- Will Bucher using hourly rates of $970 (in 2025) and $1,125 (in 2026). Mr. Bucher is the principal of Bucher Law PLLC, based in Albany, New York. A reasonable hourly rate for lawyers similarly-qualified to Mr. Bucher in that district is between $250-$350. *See Grant v. Lockett*, 605 F. Supp. 3d 399, 404 (N.D.N.Y. 2022).

- Zachary Horn using an hourly rate of $665. Mr. Horn is based in Inez, Kentucky, which is in the Eastern District of Kentucky. A reasonable hourly rate for lawyers in that district is between $200 and $400 per hour. *See Wynn v. City of Covington*, No. 21-137-DLB-CJS, 2025 WL 1746875, at *2 (E.D. Ky. June 24, 2025) (citing cases with approved hourly rates between $200 to $400), *aff'd*, No. 25-5617, 2026 WL 950772 (6th Cir. Apr. 8, 2026).

- Judson Crump using an hourly rate of $525. Mr. Crump is based in Silverhill, Alabama, which is in the Southern District of Alabama. A reasonable hourly rate for lawyers in that district is about $350 for a very experienced litigator and around $250 for a lawyer with substantial experience. *See U.S. ex rel. Sheppard v. Pathway of Baldwin Cnty., LLC*, No. 17-00355-KD-N, 2025 U.S. Dist. LEXIS 52380, at *10-11 (S.D. Ala. Mar. 21, 2025).

85.    As to the other associates, paralegals and law clerks working for Bucher Law PLLC,

PETITION TO VACATE
ARBITRATION AWARD - 15

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

assuming that these employees are also based in Albany, their rates should have been no more than $200 for associates and $90 for paralegals. Yet Respondent sought and obtained multiples of those rates.

86.    The rates are also unreasonable for attorneys practicing in the District of New Jersey, where the Arbitrator is based. In 2013, a federal court in New Jersey approved an average hourly rate of $411.16 in an antitrust class action—a figure that, adjusted for inflation, yields approximately $576 per hour today. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 157 (D.N.J. 2013).

87.    Respondent's additional fee award far exceeded all of the foregoing benchmarks with its average rate of $750 per hour.

88.    This is not "reasonable" under § 15(a) and instead is irrational and manifestly disregards the law.

**III.    The Court Should Vacate the Award Because the Arbitrator Denied Valve Due Process**

89.    The Award should also be vacated because the Arbitrator denied Valve due process.

90.    A court may vacate an award when the arbitrator "refuse[s] to hear evidence pertinent and material to the controversy; or [because] of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "In determining whether an arbitrator's misbehavior or misconduct prejudiced the rights of the parties, [the court asks] whether the parties received a fundamentally fair hearing." *Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016). Courts vacate arbitral awards when critical witnesses are excluded. *See In re Watkins-Johnson Co. v. Pub. Utils. Auditors*, 1996 WL 83883, at *4 (N.D. Cal. Feb. 20, 1996) (vacatur ordered when the only evidence the claimant offered "on the most critical issue in the case" was a written statement, which the arbitrator admitted over objection rather than require the witness to appear for cross-examination); *Moonshadow Mobile, Inc. v. Labels & Lists, Inc.*, 2024 WL 5056906, at *10-11 (D. Or. Dec. 9, 2024) (holding that a hearing was not fundamentally fair where arbitrators "prevented [party] from putting on evidence critical to its defense").

91.    The Arbitrator deprived Valve of a fundamentally fair hearing because she did not permit Valve the opportunity to cross-examine Respondent regarding antitrust injury—an essential element of

PETITION TO VACATE
ARBITRATION AWARD - 16

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

his antitrust claims. *See, e.g.*, *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999) (requiring proof of antitrust injury to plaintiff). There was no substitute for such testimony. After initial questions, the Arbitrator sustained an objection that the cross-examination of Respondent would be permitted only on the subjects of damages and standing because antitrust injury was established in hearings involving *different* claimants—the October Claimants. (*See* Ex. C at 2272:3-15 (sustaining objection limiting cross-examination to only "standing and damages").)

92.     In addition, the Arbitrator violated Valve's due process rights when awarding fees without permitting Valve to respond to Respondent's counsel's fee submissions. The Arbitrator awarded more than $1.4 million in fees to Respondent's counsel in the October Claimants' arbitrations. The Arbitrator acknowledged that the fees awarded in those matters were for "time devoted to the 24 matters assigned to this arbitrator," including the Arbitration that is the subject of this petition. As set forth in Valve's separate petitions to vacate in *Birenbaum* and *Vicente*, the Arbitrator deprived Valve of an opportunity to respond to Respondent's counsel's request for these fees attributable to the Arbitration. That violated Valve's due process rights. *See, e.g.*, *In re Classmates.com Consolidated Litig.*, 2012 WL 3854501, at *2 (W.D. Wash. June 15, 2012) ("[D]ue process require[s] that class members have an opportunity to consider and object to class counsel's complete motion for attorney fees.").

## CONCLUSION

93.     Valve respectfully requests that the Court vacate the Award.

PETITION TO VACATE
ARBITRATION AWARD - 17

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED this 26th day of May 2026.

s/ Blake Marks-Dias
Blake Marks-Dias, WSBA No. 28169
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Pro Hac Vice Forthcoming*
Meredith C. Slawe, *Pro Hac Vice Forthcoming*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Petitioner Valve Corporation*

PETITION TO VACATE
ARBITRATION AWARD - 18