HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION,<br><br>Peitioner,<br>v.<br><br>MARK SCHAEFER,<br><br>Respondent. | Case No. 2:26-cv-1806-JNW<br><br>CONSUMER-DEFENDANT MARK SCHAEFER'S RESPONSE TO PETITIONER VALVE CORPORATION'S MOTION TO VACATE ARBITRATION AWARD<br><br>NOTED ON MOTION CALENDAR: September 9, 2026 |

Consumer-Respondent Mark Schaefer ("Schaefer") hereby responds to Petitioner Valve Corporation's ("Valve") motion to vacate arbitration award. Dkt.2.



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

## TABLE OF CONTENTS

I. Introduction .......... 1

II. Facts .......... 2

III. Legal Standard .......... 4

IV. Argument .......... 4

A. Valve's Theory Of Assent Relies On Evidence That It Did Not Submit In The Arbitration .......... 4

B. Schaefer Never Assented to Valve's Unenforceable Update. .......... 5

1. Valve never provided Schaefer notice that a subsequent login would constitute assent. .......... 6

2. Schaefer's single login isn't "continued use." .......... 7

3. Even If Schaefer Assented, Valve's Update Is Unenforceable. .......... 9

C. Valve Cannot Recast the Cost of Victory as Irrational .......... 12

D. Valve Wasn't Denied Due Process .......... 14

1. Sustaining a Single Objection During Cross-Examination Was Not Misconduct and Did Not Prejudice Valve .......... 14

2. Valve's Challenge to the October Fee Awards Does Not Establish a Due Process Violation in Schaefer's Award .......... 16

V. Conclusion .......... 17



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

## I. INTRODUCTION

Mark Schaefer has waited long enough for a final judgment. He filed his arbitration in October 2023, proceeded in the forum Valve required, and litigated his claim through a final award. Valve now asks this Court to vacate that Award based on evidence never introduced during arbitration, and in any event, based on a contract Schaefer never mutually accepted.

Valve's theory rests on a single login to Schaefer's Steam account in December 2025. But it never introduced this evidence to the arbitrator; for that reason alone, Valve may not rely upon it to vacate Schaefer's award. Moreover, even this newly raised evidence fails to establish that Schaefer mutually assented to the new agreement. By the time of this alleged login, Schaefer had been arbitrating for over two years, the expert merits hearing had concluded, and Arbitrator McSorley had issued liability findings applicable to his claim. Nothing Valve sent Schaefer told him that entering his Steam credentials constituted an agreement to abandon that pending arbitration and move his dispute to court. Schaefer's case therefore does not depend on the unconscionability issue being litigated elsewhere because of Valve's reliance here on evidence never raised in arbitration and because Schaefer never mutually agreed to the update.

Nor do Valve's remaining challenges justify disturbing the Award. Its due-process claim rests on a single sustained objection during cross-examination and a challenge to a fee procedure used in different final awards. Its fee challenge asks

this Court to revisit the Arbitrator's determination of reasonable fees under the guise of irrationality. Neither provides a basis for vacatur.

In sum, the Court should deny Valve's petition and bring this dispute to judgment.

## II. FACTS

It is undisputed that Schaefer's antitrust claims were subject to arbitration under a pre-2024 version of Steam Subscriber Agreement ("SSA"). *See* Dkt.1, ¶20; *Wolfire Games, LLC v. Valve Corp.*, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021). In October 2023, Schaefer filed a demand for arbitration. *See* Dkt.1, ¶19.

On September 26, 2024, Valve unilaterally amended the SSA (the "2024 amendment"). *See* Dkt.1 ¶ 27.[1] Valve's amendment introduced a new forum-selection clause. *Id.* ¶ 28. Relying on that unilaterally amended forum-selection clause, Valve objected to Arbitrator McSorley's jurisdiction via a letter requesting a stay of 24 individual arbitrations, including the 20 at issue, pending resolution of this Court's proceeding in *Valve v. Birenbaum*, 2:25-cv-01975-JNW (W.D. Wash) ("*Birenbaum*"), Dkt.3, Ex.3. On October 27, 2024, Arbitrator McSorley denied Valve's request, distinguishing the facts here from those of *Coinbase, Inc. v. Suski*, 144 S. Ct 1186 (2024), noting, "there is and was only one contract governing the relationship between the parties at the time the parties commenced these

[1] The SSA authorizes two forms of amendment: mutual and unilateral. *See* Dkt.1, Ex. A, §8. Mutual amendments require "explicit consent to changes proposed by Valve." *Id.* §8.A. Unilateral amendments are allowed only if Valve follows specific procedural formalities. *Id.* §8.B. Valve did not follow these procedural formalities.

arbitrations and, for nearly a year, [Valve] has participated actively in the arbitration proceedings." *Id.* Arbitrator McSorley found that Valve "has also not provided any evidence that any of these [consumers] in fact has taken any step to indicate acceptance of the terms posted by [Valve] at some point before September 27, 2024, raising a question of fact as to whether there is any second contract at all." *Id*. As Valve acknowledges, on August 21, 2025, it removed Schaefer from *Abbruzzese* because "it appeared he had not yet assented to the Controlling SSA." Dkt. 2 at 10. Valve never introduced evidence of a subsequent assent to the "Controlling SSA" during arbitration.

On February 3, 2026, Schaefer testified during the merits proceeding of his arbitration. On cross-examination, Valve asked, "I noticed when reviewing your purchase history is that you seemed to have stopped purchasing games on Steam as of October 2, 2023," to which Schaefer replied, "I believed it was October 1, actually." Exh.1, p.19. Valve never asked him about a login on December 3, 2025. *See generally, id.*

On October 9, 2025, April 21, 2026, and April 23, 2026, Arbitrator McSorely issued the final awards in Consumer-Defendants' arbitrations. Dkt.3 at 52–66. She concluded that Valve unreasonably restrained trade in violation of Section 1 of the Sherman Act. Dkt.3 at 56–59. She awarded Claimant $1,029.03 in damages, $21,732.63 in attorneys' fees, and $547.30 in expenses. Exh.2 (Final Schaefer Award), p.18. On May 27, 2026, this Court ruled that unilaterally amended SSA



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

was likely unconscionable. *See Valve Corporation v. Abbruzzese*, 2026 WL 1481630, at *7-10 (W.D.W.A., May 27, 2026).

## III. LEGAL STANDARD

Judicial review of an arbitration award is "limited and highly deferential." *Haines v. Amazon.com Servs.*, 766 F. Supp. 3d 1120, 1124 (W.D. Wash. 2025). Legal or factual mistakes alone don't justify setting an award aside. *Id*. Instead, the award must be "completely irrational" or constitute a "manifest disregard of the law." *Id*. (quoting *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004)). The party opposing confirmation bears the burden of proof. *ShaZor Logistics, LLC v. Amazon.com, LLC*, 2024 U.S. Dist. LEXIS 210308, at *7 (W.D. Wash. Nov. 19, 2024)

## IV. ARGUMENT

### A. Valve's Theory Of Assent Relies On Evidence That It Did Not Submit In The Arbitration.

Valve's first argument in support of vacatur—that "the Respondent Agreed to the Controlling SSA"—fails at the threshold because it's based entirely on evidence submitted for the first time in this subsequent proceeding to vacate.

Months after the evidentiary hearing, and post-award, Valve alleges to the Court, through a declaration from its Chief Operating Officer, that, "based on Valve's business records, Respondent logged into Steam on December 3, 2025." Dkt. 4, ¶ 16. Valve never introduced these "business records" during arbitration. No


BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Valve witness testified to the alleged login. And Valve never questioned Schaefer about it.

That is too late. "[P]ermitting a party to oppose confirmation of an award based on a claim that it did not raise before the arbitrator would … offend the general principle that a party cannot remain silent … and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first." *N.Y. Hotel & Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770, 778 (S.D.N.Y. 1997); *Great Am. Ins. Co. v. Moye*, 2010 WL 2889665, at *3 (M.D. Fla. July 19, 2010) ("absent a record of the Arbitrator receiving a given piece of evidence, this Court will not receive that piece of evidence.").

Valve cannot manufacture a ground for vacatur from evidence it never presented to the arbitrator. The Court should reject that theory—and the petition—at the threshold.

**B. Schaefer Never Assented to Valve's Unenforceable Update.**

Even if the Court could consider Valve's newly raised evidence, its argument still fails at every step. First, Valve never told Schaefer that merely logging into Steam would signify assent to a new agreement. Second, its post-arbitration declaration alleges only a single login, which has never been considered "continued use" of an app. And third, the later forum provision still cannot displace Schaefer's pending arbitration because Valve's amendment is unenforceable.



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

**1. Valve never provided Schaefer notice that a subsequent login would constitute assent.**

Ninth Circuit precedent requires an online user to be "explicitly advised" that the act in question will signify agreement. *Godun v. JustAnswer LLC*, 135 F.4th 699, 710–11 (9th Cir. 2025). "[E]ven strongly implicit advisement isn't enough"; the notice must identify "what, exactly," the user will do to "signal assent." *Id.* at 711; *see also Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1158 (9th Cir. 2025) (an advisal stating "[b]y signing up you agree" did not establish assent because the button the user clicked said "Continue.")

Valve's September 2024 notice never said that logging in constituted assent. It said the Updated SSA would become effective "immediately when you agree to it, including when you make most purchases, fund your Steam wallet, or otherwise accept it." Dkt. 4, ¶ 8. Otherwise, it would become effective November 1, 2024, "unless you delete or discontinue use of your Steam account before then." *Id.* Neither statement tells a subscriber that merely logging in months later, for any purpose, creates a bilateral agreement.

By August 21, 2025—nearly a year after the original notice—Valve itself reported, "based on data available at the time it appeared that [Schaefer] had not yet assented to the Controlling SSA." Dkt.1 ¶ 40; Dkt.2 at 5. In fact, Valve again revised the SSA on September 18, 2025. Dkt. 4, ¶6 n.1. Yet Lynch identifies no email, pop-up, or other notice to Schaefer of that revision, much less notice that a later login would constitute assent to the agreement then in effect. Valve instead


BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

connects a September 2024 notice to a December 2025 login across an intervening amendment.

Nothing Valve sent Schaefer told him that logging in would carry that consequence. Under *Godun* and *Chabolla*, Valve cannot convert an act it never identified as assent into an unambiguous agreement to a new forum.

**2. Schaefer's single login isn't "continued use."**

Valve's outside the record evidence fails to support its theory. Valve alleges Schaefer "logged into Steam on December 3, 2025." Dkt. 4, ¶ 16. Valve converts that authentication event into "continued use of Steam" and, from there, mutual assent to a new "bilateral agreement." Dkt.2 at 4. Lynch identifies no purchase, Wallet funding, key redemption, acceptance click, game launch, or other activity after Schaefer logged in. Valve alleges only that Schaefer accessed his account, and that single act is not "continued use." And if Scheafer logged in on December 3, it was almost certainly to prepare for his testimony. Valve now attempts to use that alleged log-in as a basis to deny his access to the very arbitration for which he was readying himself.

*Pilon v. Discovery Communications, LLC* draws a sharp distinction between authentication and use. One consumer, Brian Pilon, continued paying for his subscription, clicked through the new notifications, and streamed content after the updated agreement. 769 F. Supp. 3d 273, 289–90 (S.D.N.Y. 2025). The court found these acts constituted continued use of the Discovery app.

Another user, Russell Stephen, simply accessed his account. Discovery then admitted that Stephen's "activity after he logged in . . . is not available in Discovery's records." *Id.* at 290–91. Discovery therefore could only speculate that Stephen continued using the service after that single login. The court rejected that inference, concluding that Stephen's "potential continued use" was insufficient to establish actual continued use of the app. *Id.* Thus, proof that a user logged in is not proof of what the user did afterward.

Valve claims Schaefer logged into his account on December 3, but offers no evidence of what he did next. On this record, *Pilon* establishes that unwarranted speculation cannot be the basis for continued use of an app.

Valve's theory also collapses access into use. Under Valve's logic, the purpose of the login is of no moment. Change a password? Continued use. Check account information? Continued use. Prepare to close the account? Continued use. Even a consumer who logs in only to retrieve purchase records to use as evidence in a pending arbitration has, under Valve's theory, used Steam and agreed to move that arbitration to court. That cannot follow from the bare fact of authentication.

Valve ultimately bears the burden of proving the bilateral agreement it invokes. *ShaZor Logistics*, 2024 U.S. Dist. LEXIS 210308, at *7. But its continued-use theory is fundamentally flawed because it's based on access, not use. The Court should therefore reject this theory.



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

**3. Even If Schaefer Assented, Valve's Update Is Unenforceable.**

Even if Valve could prove Schaefer assented to a later agreement, that would not entitle Valve to vacatur. As this Court has noted, the amendment is likely unenforceable because it is procedurally and substantively unconscionable. *See Abbruzzese*, 2026 WL 1481630, at *7-10. There are several more independent reasons it is unenforceable:

**The parties delegated arbitrability to the arbitrator, who already rejected Valve's jurisdictional challenge.** On Valve's motion, this Court held that the parties agreement delegated challenges to the arbitration clause to the arbitrator because the incorporated AAA rules give arbitrators authority to decide objections concerning the "existence, scope or validity of the arbitration agreement." *Wolfire Games*, 2021 WL 4952220, at *2 (quoting *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 n.1 (9th Cir. 2013)). Valve later presented its challenge based on the amendment to Arbitrator McSorley, and she rejected it. *Birenbaum,* Dkt.3, Ex.3. Valve cannot transform an amendment to the same SSA into an opportunity for judicial reconsideration of an arbitrability question the parties delegated and the arbitrator decided. *See Fortune, Alsweet & Eldridge v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983) ("a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result").

**The forum provision is independently unenforceable because Valve didn't obtain the required explicit consent and because the provision is**

**unconscionable.** The user agreement permits a mutual amendment only through Schaefer's "explicit consent to changes proposed by Valve." Dkt.1, Ex.A, §8.A. Even if Schaefer's alleged December 2025 login constituted assent of some kind, it didn't establish the clear and unequivocal consent required by Valve's own amendment provision. *See Rosenow v. Facebook, Inc.*, 2025 WL 951277, at *14 (S.D. Cal. Mar. 28, 2025); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019). Nor is the retroactive forum provision enforceable. The provision is procedurally unconscionability because it presented consumers a nonnegotiable amendment while Schaefer's represented arbitration was pending, and rejection required surrendering the Steam account—and with it, access to previously purchased games. It was substantively unconscionable because it operates entirely to Valve's benefit: it would erase an arbitration Valve required, after Schaefer litigated it and won an award. Washington law does not enforce such one-sided provisions. *Tadych v. Noble Ridge Constr., Inc.*, 200 Wn.2d 635, 645–46, 519 P.3d 199 (2022).

**Waiver and equitable estoppel bar Valve from repudiating the arbitral forum it required Schaefer to use**. Waiver follows ordinary principles and turns on knowledge of the right and conduct inconsistent with that right. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). Valve insisted that these antitrust disputes belonged in arbitration, successfully argued that arbitrability itself was delegated to the arbitrator, and then actively litigated Schaefer's claim there. Schaefer relied on that position by filing and prosecuting the arbitration for



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

years. Equitable estoppel prevents a party from inducing reliance on one position and later abandoning it to the other party's detriment. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009); *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 336 (1989). Valve cannot require Schaefer to arbitrate and then, after he has done so through award, invoke its own intervening amendment to nullify that proceeding.

**Judicial estoppel independently forecloses Valve's reversal.** Judicial estoppel prevents litigants from "deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). The doctrine applies where the later position is clearly inconsistent with the earlier one, acceptance of both positions would create the perception that a tribunal was misled, and the change would confer an unfair advantage or impose an unfair detriment. *Baldwin v. Silver*, 147 Wn. App. 531, 535, 196 P.3d 170 (2008) (citing *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538–39 (2007)). Those considerations are present here. Valve persuaded the Court in *Wolfire* that arbitrability under its SSA belonged to the arbitrator; Schaefer proceeded accordingly; and Valve submitted its later jurisdictional objection to Arbitrator McSorley. Valve now asks this Court to take the opposite course and invalidate the resulting award. Judicial estoppel prevents Valve from obtaining that advantage through positions irreconcilable with those on which the prior proceedings were conducted.

Thus, even assuming Valve could establish assent to its amendment, the new forum provision is unenforceable and provides no basis to vacate Schaefer's award.

**C. Valve Cannot Recast the Cost of Victory as Irrational**

Valve cannot meet the standard for vacatur under §10(a)(4) of the FAA. The Ninth Circuit has made clear that §10(a)(4) sets a high bar—it is not enough to show that the arbitrator erred, or even seriously erred. *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010). The award must be "completely irrational" or reflect a "manifest disregard for the law." *ShaZor Logistics,* 2024 WL 4827533, at *3 (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997–98 (9th Cir. 2003)). Nothing about this fee award approaches that standard.

Valve's main authority is inapposite. In *In re Briscoe Protective, LLC v. N. Fork Surgery Ctr., LLC*, 215 A.D.3d 956, 957–58 (N.Y. App. Div. 2023), the arbitrator awarded fees without proof of the hours worked or rates charged, simply fixing fees at fifty percent of the damages. Here, Bucher Law submitted billing records and evidence supporting its rates. Arbitrator McSorley then reviewed that evidence and made express findings concerning the compensable work and reasonable rates. Dkt.3, Ex.22 at 14–16. *Briscoe* involved an award without evidentiary support. Schaefer's award was supported by proof.

Valve's attack on the amount of the award fares no better. Valve says a reasonable fee must be "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007). Bucher Law was the first law firm to prevail against Valve



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

on an antitrust claim in arbitration. Victory alone establishes Bucher Law's competence.

This also undermines Valve's claim of a "windfall." Valve cannot establish a windfall merely by declaring that the first lawyers to accomplish something should have accomplished it more cheaply. Arbitrator McSorely had no prior successful Valve antitrust arbitration against which to measure the legal costs of victory. Valve's assertion that the award "far exceeds" a reasonable fee is therefore rank speculation.

Likewise, the ratio between the legal fees and Schaefer's damages is rational. Congress expressly provided that a successful private antitrust plaintiff "shall recover" the cost of suit, "including a reasonable attorney's fee." 15 U.S.C. §15(a). In the forum Valve mandated, individual arbitration, the awarding of small individual awards does not make the cost of proving an antitrust violation unreasonable. And Arbitrator McSorley expressly considered the disparity between Schaefer's damages and his fees before determining the amount to award. Dkt.3, Ex.22 at 16.

What remains is Valve's lengthy audit of Bucher Law's bills. Valve identifies entries it would exclude, work it would allocate differently, and rates it would reduce. Dkt. 2 at 7–10; Dkt. 3 ¶¶ 35–49. But Arbitrator McSorley reviewed the billing evidence, heard Valve's objections, and made the fee determination. Valve now asks this Court to redo that work entry by entry and rate by rate until it reaches a number Valve prefers.



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

That is not review for complete irrationality. It is a request for de novo review of the fee award. Section 10(a)(4) does not permit it, and the Court should deny Valve's petition on this ground.

**D. Valve Wasn't Denied Due Process**

Section 10(a)(3) permits vacatur for arbitral misconduct only when the arbitrator's conduct deprived a party of a fundamentally fair hearing ***and*** caused prejudice. "[F]ederal courts are empowered to set aside arbitration awards on such grounds only when 'the arbitrators were guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy.'" *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987). Thus, the challenged conduct must amount to "misbehavior by which the rights of any party have been prejudiced.'" *Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016). And the party seeking vacatur must make "a showing of prejudice." *Emps. Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1490 (9th Cir. 1991); *see, e.g., Thames v. Woodmen of World Life Ins. Soc.*, 2013 WL 4162257, at *3 (S.D. Ala. Aug. 13, 2013) (party seeking relief under §10(a)(3) "must show that the arbitrator's handling of these matters was in bad faith or so gross as to amount to affirmative misconduct.")

**1. Sustaining a Single Objection During Cross-Examination Was Not Misconduct and Did Not Prejudice Valve**

In arbitration, "a party does not have an absolute right to cross-examination." *Sunshine Min. Co. v. United Steelworkers of America, AFL-CIO,*

*CLC*, 823 F.2d 1289, 1295 (9th Cir. 1987) (finding no due process violation in denying opportunity to cross-examine psychiatrist because arbitrator allowed "an adequate opportunity to present evidence [on mental condition] and argue the question at the hearing and in the post-hearing briefs."); *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 752 (8th Cir. 2003) ("Arbitrators have broad discretion to limit the cross-examination of witnesses at arbitration hearings.").

Valve's claim of misconduct rests on a single sustained objection. During cross-examination, Valve questioned Schaefer whether a particular video game could be purchased on non-PC platforms, and Arbitrator McSorley sustained an objection to that questioning. Dkt.1-4 at 7-8. Valve now pushes this one evidentiary ruling as grounds to vacate the entire award but never explains what material evidence the ruling prevented it from presenting. It makes no offer of proof identifying the testimony it expected to illicit from Schaefer, much less testimony that had not already been addressed by other witnesses or was otherwise undisputed. A single limitation on cross-examination, without any showing that it prevented Valve from presenting pertinent and material evidence, doesn't amount to bad faith or affirmative misconduct. *See Thames*, 2013 WL 4162257, at *3

Valve independently fails to show prejudice. Courts reject § 10(a)(3) challenges when the moving party fails to explain how the challenged evidentiary ruling affected the arbitration's outcome. *See, e.g.*, *Wausau*, 933 F.2d at 1490 (affirming denial of vacatur where petitioner "has neither argued nor demonstrated that this evidentiary ruling influenced the outcome of the arbitration."); *Nordahl*



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

*Development Corp., Inc. v. Salomon Smith Barney*, 309 F.Supp.2d 1257, 1265 (D. Or. 2004) (denying § 10(a)(3) motion where petitioner "[did] not explain how such evidence would have changed the arbitrators' reasoning.").

Here, Valve devotes only one sentence to prejudice: "[t]here was no substitute for such testimony." Dkt. 2 at 11. That assertion does not identify the testimony Valve was prevented from eliciting, explain why it mattered, or show how its exclusion affected the Award. Valve's failure to demonstrate prejudice is itself sufficient to reject this ground for vacatur.

### 2. Valve's Challenge to the October Fee Awards Does Not Establish a Due Process Violation in Schaefer's Award

Valve's second due process challenge attacks the wrong award. Valve contends that "the Arbitrator violated Valve's due process rights when awarding fees without permitting Valve to respond to Respondent's counsel's fee submissions." Dkt.2 at 11. But the fee procedure Valve challenges is the procedure used for the earlier Birenbaum and Vicente awards—not the fee award entered for Schaefer. The December and February consumers followed a different fee procedure, one that expressly gave Valve an opportunity to respond. Exh.3 (Scheduling Order dated 9 December 2025) and Exh.4 (Scheduling Order dated 16 February 2026).

Valve fully participated in that process and never objected. It therefore waived its right to seek vacatur that the procedure violated due process. *See Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004) (holding



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

that a party "waived its right to seek vacatur of the arbitration award" where it failed to object during arbitration). As the Ninth Circuit explained, refusing to entertain objections first raised after an award is "consistent with our policy favoring arbitration as a speedy and cost-effective means of resolving disputes." *Id.* at 1313. Valve cannot participate in the fee process without objection, wait to see the result, and then recast that same process as a due-process violation.

Even absent waiver, Valve cannot show prejudice. It "had notice, it had the opportunity to be heard and to present relevant and material evidence, and the decisionmaker[ ] [was] not infected with bias." *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1177 (9th Cir. 2010). In *U.S. Life*, the Ninth Circuit found no § 10(a)(3) violation even though the arbitration panel met ex parte with two experts because "both parties were aware of the ex parte contact, submitted suggestions as to the process to be used, and had the opportunity to contest the reviewers' conclusions." *Id.* at 1176. Valve had more process here: it received the fee submissions, had an express right to respond, and exercised that right. It therefore cannot show that the fee procedure caused any prejudice.

## V. CONCLUSION

For the reasons set forth above, Schaefer respectfully request that the Court deny Valve's petition and motion to vacate.



BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

DATED this 19th day of August, 2026.

BAILEY DUQUETTE P.C.

By: /s William R. Burnside

William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.353.8021
E: will@baileyduquette.com

BUCHER LAW PLLC

William Ward Bucher IV
(*pro hac vice* forthcoming)
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131
Tel. 202.997.3029
E: will@bucherlaw.com

*Attorneys for Schaefer*

*I certify that this motion contains less than 4,200 words pursuant to Local Rules W.D. Wash. LCR 7(e)(3).*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused a true and correct copy of the foregoing Respondent Mark Schaefer's Response to Motion to Vacate Award served upon counsel of record herein, as follows:

Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
E: bmarksdias@corrcronin.com

Via Electronic Service

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
E: michael.mctigue@skadden.com
E: meredith.slawe@skadden.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: August 19, 2026 at Seattle, Washington.

*s/ William R. Burnside*
William Burnside, WSBA No. 36002